## Peck and Wife, Appellants, *v.* Glass *et al.*

A. devised all his estate real and personal to his wife, during her natural life, remainder over, and appointed her his executrix. He also directed by his will that his debts should be paid as soon as possible, out of any funds which his executrix might be able to appropriate for that purpose. At the time of the death of the testator, the estate was largely in debt. Held, the rents and profits belong to the tenant for life, and the remainder man is bound to contribute in proportion to his interest towards removing the incumbrances upon the estate; and that the advances by the tenant for life for that purpose are a lien upon the estate.

APPEAL from the probate court of the county of Warren.

The record in this case presents the following state of fact:—Anthony Glass died in November, 1834, leaving a duly executed will, of which it is necessary to notice only the following items:—

First. A devise of all his real and personal estate to his widow for life.

Second. Sundry specific legacies and bequests in remainder.

Third. A general devise in remainder to appellees.

Fourth. A clause, being the sixth item of the will, in the following language:—"*I will and desire that all my just debts shall be paid as soon as possible, out of such funds as my executrix may be able to appropriate to that purpose.*"

And lastly:—A clause appointing the widow and devisee for life executrix.

At the April term, 1840, of the probate court, appellants filed their petition, stating that they had paid forty thousand two hundred and eighty-eight dollars and thirty-two cents of debts of the said testator, and in so doing had used eighteen thousand four hundred and ninety-seven dollars and sixteen cents of the assets of the estate on hand at testator's death; that the executrix had relinquished her dower, and held under the will, and since testator's death had intermarried with J. J. Peck. The petition concluded

by claiming a lien upon the real and personal estate for the debts paid, to the extent of twenty-two thousand dollars, the amount due, and prayed for an order of sale. At the same term of the court, appellants presented their account, which was referred to commissioners to audit and examine.

The answer of the appellees to the petition of appellants denied their indebtedness, and set up the sixth clause of the will as establishing a charge upon the executrix to pay the debts due by the testator. They denied the necessity of selling any portion of the real estate, and denied the right of the appellants to the relief prayed for.

At the May term, 1840, the commissioners made their report, to which appellees filed six exceptions, in substance as follows:— First. That many of the items of the account were for the prosecution and defence of suits instituted *since the death of the testator*. Second. Some of the items were for work done upon a house of said testator's since his death. Third. That many of the items had not been presented for payment and allowance within the proper time, and were therefore barred. Fourth. That the account never having been examined and allowed by the probate judge, was improperly referred to commissioners. Fifth That the account was incomplete. And Sixth. That no account of the rents and profits of the estate was taken.

The court below overruled the first four exceptions, and sustained the two last.

The appellants admitted the rents and profits to have been sufficient to discharge the indebtedness, and the court dismissed their petition. From that dismissal they appealed.

George S. Yerger, for appellants.

The fifth exception need not be noticed, for if the report is not complete, it can be made so, and as it is not relied on by the other side, I will take no notice of it.

This petition was filed to have the personal property sold, and if that is insufficient, the real estate, to pay complainants what is due to them. It is resisted, upon the ground that the widow, (who is tenant for life,) is entitled to nothing; that although she

paid the debts from the proceeds of her labor and the rents, &c., yet, that the remaindermen are entitled to the benefit of it; and now that the debts are paid off, she can have the use of it the balance of her life.

On the other hand, the executrix contended below, that she was to have the use of the property during her life; that the use of it and the rents and profits were hers absolutely, and that she is entitled to be repaid the whole forty thousand dollars; and if it is not paid by the remaindermen, that the property must be sold to pay her.

After a very careful examination of the authorities, I am of opinion that they are both wrong.

On the one hand, (the property being by law charged with all the debts,) it would be unjust to the remaindermen to let the property be used by the tenant for life, during her lifetime, and the debts due by the estate be accumulating upon interest, so that in ten or twelve years the principal would be doubled; and after the death of the tenant for life, it would take it all to pay it. Whereas, had it been sold at once, one half, perhaps more, would be left for those in remainder.

On the other hand, to say that the tenant for life should be toiling and laboring for years to save the property, and if at the end of ten years she eventually pays them off, and then dies, all her labor would be for those in remainder, and she would not be benefited by the devise at all. Indeed, a devise to her for life, would in such case be a curse instead of a blessing.

But the rule of law in such cases is very plain and simple, is just in its operations, and makes the burthen to be equally borne by all the parties in proportion to their respective interests.

By the law of this state, lands and personal property are all charged with the payment of debts. How. & Hutch. 407, sec. 76. And the will in this case, directing the debts to be paid, in the absence of any statutory provision, creates a charge upon the estate.

The executrix might at once have proceeded and had the property sold to pay the debts, but this would have sacrificed it. Suppose she had paid the whole amount of debts out of her *individual money*, would she not have been entitled to sell the property

to repay it ? or have called on the persons beneficially entitled, to pay her? She could have called on each, in proportion to his interest, and said, now pay me your proportion, or the estate must be sold.

As the estate devised to her and the defendants, was charged with the debts, all the devisees, if they wish to keep the estate, and not have it sold, must contribute to pay off the charge, in proportion to their respective interests.

Where a tenant for life pays off an incumbrance or charge upon the estate, he shall be considered as a creditor. Jones *v.* Morgan, 1 Bro. Ch. 206. So when an executor or administrator pays off the debt, he is a creditor, and is substituted to the securities of the creditor, and may resort to the trust fund for repayment. 10 Pep. 532; 2 How. R. 813.

Where tenant for life pays off the debts, with which the estate is chargeable, it cannot be presumed *it was paid* in exoneration of the estate, but the estate is liable to him for all over his proportion. Reddington *v.* Reddington, 1 Ball. & Beatty, 131.

The tenant for life is entitled to the rents and profits, and use of the property. The rents, &c. &c. belong to him; but he and the remaindermen must pay their proportion of the debts charged upon the estate. 1 Chitty's Digest, 358, 362, 379, 380, and cases cited; Allen *v.* Backhouse, 2 V. & Beames, 65; 1 Jacob's Rep. 631; White *v.* White, 4 Vesey; 3 Swanston 168. So they must contribute in proportion for necessary repairs. 1 Ch. Dig. 359; Hibbert *v.* Coke, 1 Simon & Stuart, 552.

But although the law is settled that where an estate is chargeable with debts, and it is devised or granted for life, with remainder over, that the tenant for life and remaindermen should contribute, in proportion to their respective interests, to pay off the debts, yet what that proportion ought to be, has been the subject of much litigation, and variety of opinion. The *rule* once was, that the tenant for life should pay one third, regardless of the probability of the duration of life, &c. Another rule was, where the principal was not to be paid until after the termination of the life estate, to keep down the interest. But the modern rule, as stated by Judge Story, is perhaps more just and equitable to both parties.

Peck and Wife, Appellants, *v*. Glass *et al*.

In 1 Story's Equity, 461, and page 464, sec. 487, the rule is stated thus: "In respect to the discharge of incumbrances, it was formerly a rule, that the tenant for life, and the reversion or remainderman were bound to contribute in a proportion fixed by the court, so that they paid a gross sum, in proportion to their interests in the estate; and the usual proportion was for the tenant for life to pay one third, and the remainderman two thirds." But the rule, he adds, is exploded in England, and a more reasonable rule adopted. It is this, "that the tenant shall contribute beyond the interest, in proportion to the benefit he derives from the liquidation of the debt, and the consequent cessation of annual payments and interest, during his life, which of course will depend upon his age and the computation of the value of his life, and it will be referred to a master to ascertain and report, what proportion upon this basis, of the amount due, the tenant for life ought to pay, and what ought to be borne by the remainderman. And if the estate is sold, as it may be in such case, the surplus beyond the amount necessary to discharge incumbrances is to be applied as follows: the income is to go to the tenant for life during his life, and when the capital to be paid to the persons in remainder," &c. See page 441; also, 461, 23.

The rule previously stated, that when an estate is charged or incumbered, the persons to whom it is devised or given, must contribute in proportion to their respective interest, is discussed and explained very fully, by Judge Story, Story's Eq. 461, et seq. So the principle that where a tenant for life pays off the debts, he does not pay it to exonerate the remainderman, and that by such payment he becomes a creditor, and is substituted to his rights, as also stated by Judge Story, at page 464.

The following principles are therefore clear, and deducible from the foregoing authorities:

1. That by the law of this state, and the will of the deceased, the estate is chargeable with the payment of the debts.

2. That a payment of the debt by the tenant for life, substitutes him in the place of the creditor, and he becomes a creditor against the estate.

3. That he is entitled to contribution from those in remainder, for their proportion of the debt paid; and if they fail or refuse to

pay, he may, as creditor, have the estate sold, to pay what is due upon it.

4. That the matter must be referred in England to a Master, here to Commissioners, to ascertain and report what proportions ought to be paid by each, taking into view the age, health, &c., of the tenant for life.

5. That the court should order the estate to be sold for the payment of the property due by the remainderman to the tenant for life, unless the tenants in remainder shall within some time to be appointed by the court pay the said balance due.

6. That the proportion due by the remainderman, will be so much of the whole amount of debts paid as is ascertained to be their proportion by the report of the Commissioner.

The law of this state charges all the real and personal property with the payment of debts. The statute is express on this subject. In England, real estate is not charged with the payment of debts by law, but is only made so by the act of the owner, either by will or deed. It may be important to keep this distinction in mind.

The defendants admit in their brief as undisputed law, that when *there is a charge upon property*, the tenant for life and those in remainder must contribute rateably to pay it; but they insist, that this rule of law has been controlled by the intention of the testator, as manifested in the sixth item, in these *words:* "I will and desire that all my just debts shall be paid as soon as possible, out *of such funds* as my executors may be able to appropriate for that purpose." This they insist is a personal charge, or condition annexed to the bequest for life, i. e. the debts were to be paid, not out of his, the testator's property, but out of the executrix' property.

The simple enquiry then is, did the testator mean to say, "I give you my estate for your life, upon condition that you personally, out of your own funds, and not as executrix, pay my debts, amounting to about twenty-five thousand dollars. To state the proposition is to answer it. The testator knew his wife might die in a week or a day, and the property go over. He did not mean that in such case, her property, if sufficient, should pay his debts. His meaning was, that *she, as executrix, out of such funds, i. e. funds belonging to the estate, as could be most conveniently*

*spared, should be appropriated.* The uniform construction of law and of common sense has been, that where a testator directs his executor to pay his debts, he means that he shall pay them out of the testator's property. The authorities cited on the other side, so far from sustaining a contrary position, fortify this.

Suppose in this case the property was worth sixty thousand dollars and the debts were thirty thousand, could not creditors compel the executrix to sell thirty thousand dollars to pay these debts? Surely they could, because property is liable and charged with debts; this would then leave thirty thousand dollars. Could not the executrix sell it and pay the debts? Surely she could. If so, thirty thousand dollars would be left. If in such case she paid the debts out of her own pocket, would not a court of equity substitute her for the creditor, and order the property to be sold to pay what she had paid out? Unquestionably it would. And why? Because by law the property was charged with the debts, and it is her duty to pay them off. The authorities cited by me are ample to this point. I will notice the cases cited by defendants.

The case first cited is that of Kenval *v.* Whitaker, 3 Russell, 343; 2 Con. Ch. Rep. 427. It does not conflict with the rule. The testator in that case first devised that all his debts should be paid by his executor.

2. He devised all his estate, &c. to his executor, subject to legacies and annuities before mentioned. Here was no life estate given, and the only question was, whether a charge upon the *real estate* was created or not. *The chancellor said it was;* and in coming to this conclusion, said that the obligation to pay the debts was a condition imposed on the executor to be satisfied as far as all the property he devised under the will would extend, *real* as well as personal. Here the executor took fee simple. Had the devise been to the executor for life, remainder over, the chancellor's decision would, on his own reasoning, have applied to the whole property and made it a charge, (not merely the life estate) but the whole estate or property.

The cases of Finch *v.* Hatterly, and Brigden *v.* Lander, cited in the notes to law case, 3 Con. Ch. Rep. 428, prove clearly my position. In both these cases, there were de·ises *for life to the executrix,* with a charge to pay debts, as in this case, and in both cases

the court decided, *the property thus devised for life, with remainder over, was absolutely liable to pay debts;* not merely the *life estate, but the entire property.*   These cases are decisive against defendants, for if the property is liable to pay the debts, it may be sold to pay them; and if sold to pay them, the interest of the remaindermen is sold as well as that of the tenant for life.

The next case cited by defendant is in 2 Sch. and Lefroy, 188. In that case certain real property of the testator was encumbered with debts.   He, in his will says, "in order to exonerate my real estate and enable my son George to pay off said encumbrances and debts, I leave and bequeath all the rest of my estate, real and personal, *and I do hereby order and direct my son George to pay off my just debts."*   George was not *his executor.*   The court decided that George was a trustee as to the property given to him; that the property was given to him to pay the debts with; that the intention was manifest to exonerate the real estate of the incumbrances on it, and put them on the property given to George.

This case was correct.   George was not the *executor.*   The testator directs him to pay his debts out of the property given, to release other property, &c.

Again: Suppose the property had been given to George for life, remainder to others, with directions to George to pay the debts, this would create a charge on the entire estate or property according to the case itself.   If so, the property would be sold—and if in such case George paid all the debts, he could call on those in remainder for contribution.

These are all the cases cited on this point, and they conclusively establish my position.   See particularly *Ronald* v. *Feltham, Turner & Russell's Rep.* 418, *a case like this in all respects.*   It is next urged, that she had an election to take under the will, or take her dower.   That if she took under the will, she took the property with all its incumbrances.   This is certainly true, and so do the remaindermen take the property with all its incumbrances, and so do all devisees take, subject to encumbrances; but in all such cases, the law says the devisees shall contribute in proportion to their interest to pay off the incumbrances.

It is next argued, that no allowance should be made except for debts contracted by the testator in his lifetime, and that the charge

for repairs on house, for costs, &c., paid in prosecuting and defending law suits, ought not to be allowed.

It is true part of the items of account were of the latter description. But it is believed to be a clear principle of law, that all necessary charges and disbursements, honestly and bonafidely paid by a trustee or executor, are to be allowed him in his accounts. These items are not charged on the estate created in the lifetime of the testator, but they are charges which the estate is subject to pay. Hard would be the task of an executor or trustee, if he lost time, labor, trouble, and was not remunerated his *bona fide* expenditures. "*The report on its face shows that the fees and costs were paid necessarily in resisting unfounded claims against the estate, or for prosecuting suits and claims bona fide brought on reasonable grounds. &c.*"

If charges of this kind are not allowed to trustees and executors, out of the estate, the offices must go begging. That they are allowed, see Sanders on Uses & Trusts, 374, 375.

Trustees, executors, &c., are always allowed necessary expenses incurred for the relief, or protection, or repairs of the estate; Hogstrif *v.* Hook's Adm'r.; 1 Gill & Johnston, 273.

So if he has made *bona fide* advances, he is entitled to be refunded out of the estate; Wall *v.* Wall, 2 M'Cord, Ch. Rep. 82. So for necessary repairs and improvements, and he has a lien upon the property for them; Murray *v.* Rotterdam, 6 John. Ch. Rep. 82. The report on its face shows the advances were *bona fide and necessary*.

It is next said by the appellees, that if there is an indebtedness, the personal estate must first be sold to pay it. This is true, and the petition in this case asks it to be sold first; and if it did not, the court would order it.

Again, it is said we ought not to be allowed interest, that it is an important item, &c. It is said "a devisee for life is bound to keep down the interest," and to sustain this, 1 Vesey, 234; 3 Bn. Ch. cases, 120, and other cases are cited. I have no objection to this case being settled upon the principle of these cases, which is, that the tenant for life is bound to keep down the interest, but *not to be charged with the principal:* this is the case in 1 Vesey 233, 234, cited; 1 Story, 466.

When the books speak of a tenant for life keeping down the interest, it is in cases where the incumbrance exists, and the tenant for life cannot be called on to pay any of the principal, as when the debt is not to be paid until after the termination of life estate, &c.   We are perfectly willing to agree to this rule; that is, we will pay all the interest, and let defendants pay us the principal, of what has been paid; that is, the interest is to be considered our proportion.

It is again said, some of the claims paid by the executors ought not to be allowed, because they were not *presented and allowed* by probate court, within the time prescribed by law, to avoid act of limitations.   It is not necessary to insist that an executor is not bound to plead limitations.   But suppose he is, there is no necessity to have it allowed by probate court, to avoid the statute.   Presentment to the executor is sufficient.

Again.   The statute would not bar, unless it was shown that the executor duly advertised, as required by law.   Wren *v.* Span, 1 Howard, 115.   But there is not the slightest evidence in the record that a single item was barred at the time it was paid.   1 Howard, 115.

The whole case is this : the estate was charged with the debt; the property itself was liable to pay these debts; Peck and wife had a life interest, and defendants the remainder, in the property; the tenant for life paid the debts out of his interest, that is, his life estate, and he calls for contribution.   4 John. Ch. Rep. 545.

This precise case has been determined by the supreme court of Tennessee.   Hunt *v.* Mithens, 1 Humph. Rep. 498.

Guion & Smedes, for appellees.

First. As to the construction of the will.

The exposition of wills has always been governed by the intention of the testator.   It is, in the language of Justice Wilmot, a century ago, "the pole star for the direction of devises."   *Voluntas testatories totum est.*   And Lord Loughborough, in 4 Vesey, 341, says: "It is my duty to give effect to the will, as far as the intention can be clearly made out.   It is not permitted to me to be affectedly ignorant of the intention, *much less to control a certain established intention, upon my own idea of the fitness or unfit-*

*ness—the liberality—or the political tendency of it.*" There is nothing, then, in the nature of a will to prevent a testator's charging the life estate with the payment of the debts due by him, or if a devise for life of a rich estate that frees itself from every incumbrance in a few years can be so considered, from bequeathing "*a curse instead of a blessing.*"

We will proceed, then, to inquire what the testator has really done. The *words of the will* are the guides to its interpretation. Technical words are not required; "words of intention are words of devise," Ram. on Wills, 56, and this intention is to be gathered from the whole will. " The words are the means to ascertain it; and however they may be scattered, if they explain the intention, they are to be collected and put together, that the particular devise may have the effect intended." Ram. 64.

"It is the intention of the testator *at the time* he makes his will, which alone the law will carry into effect. Events which have happened *since the publication of the will*, are unavailable to introduce an intention into it." Ram. 107.

Bearing these few elementary principles in mind, it seems to us, that there cannot be a doubt as to the intention of the testator and the interpretation of the will. The testator dies—indebted some twenty five or perhaps thirty thousand dollars—leaving an estate, consisting of land, negroes, houses, and town lots, the annual crop and profits of which, at the time, are worth nearly $18,000. He devises, in the first clause of his will, this entire property, both real and personal, to his widow for life; and in the sixth clause he says, "I will and desire that all my just debts shall be paid *as soon as possible, out of such funds as my executrix* (the devisee for life) *may be able to appropriate for that purpose.*" The will makes an *absolute* disposition of *all* the estate, real and personal, to remaindermen, and directs how and in what portions it shall be divided. It is clear the testator did not intend that the remaindermen should receive a diminished property. The devise to them was *of all the estate he then had.* It was clearly his *expressed* intention, that, after the death of his wife, they should enjoy his entire means. But by law the debts were a charge upon the whole property, real and personal. This the testator knew, and knew also that the debts were comparatively small, *and provides that*

18*

*they shall be paid.* How, and by whom? *by the executrix, as soon as possible,* out of such funds *as she might be able to appropriate for that purpose.* "*May be able to appropriate for that purpose*"—Did the testator, by this language, mean the land and negroes? Did he mean that the remaindermen should pay the debts? On the contrary, it was a direct charge upon her to pay them. Suppose the sixth clause had, in the arrangement of the will, immediately followed the first clause, (giving her the life estate,) could even the most interested doubt the testator's intention? and yet they must be interpreted as if they stood together. Ram. 64. There was a crop on hand, at his death, nearly sufficient to pay all he owed. [The court will recollect the forty thousand dollars, alleged to have been paid by appellants, consists in a great measure of the expense of prosecuting and defending law suits *instituted since testator's death.* The proceeds of this crop were the funds he alluded to. They amounted to eighteen thousand dollars. Another crop would pay nearly all appellant's claim, even in this court. These were the funds the executrix could appropriate for that purpose, and she did so appropriate them. What is meant by 'paying the debts as soon as possible?' Exposing the land and negroes to sale, years after testator's death, at a period of universal bankruptcy and pressure—or by the crop on hand and succeeding crop?

The fact that law suits, with their heavy expenses, have arisen and been commenced *since* testator's death, cannot alter the intention of his will. Ram. 107. He was innocent of all debts of that description, and devised his property without reference to them. He intended the crop on hand should pay the debts, (as it did,) and that those in remainder should take an undiminished estate. And it is not for the devisee for life to alter that intention of testator's, by contracting heavy debts after testator's death, and making the interest in remainder liable for them.

Although the language of this will is peculiarly definite, and needs no authority to strengthen our interpretation, yet we are not without that authority. Hewell *v.* Whitaker, 3 Rus. 343; (3 Con. Eng. Ch. Rep. 427,) is directly in point. The language of the will in that case is almost *verbatim* the same with this, and the Master of the Rolls said, "When the testator, in his will, directs

that all his just debts be fully paid by his executor thereinafter named; in such case the obligation to pay his debts *would be a condition imposed upon the executor, to be satisfied as far as all the property, which he derived under the will, would extend whether real or personal.*" Such language in a will does not make the debts merely a charge upon the real estate, but subjects the *particular estate* conveyed to the executrix to the payment of the debts first as far as it will go, to the exclusion of the other estates devised.    2 Scho. & Lef. 188; Chit. Eq. Dig. 372; Bridgen *v.* Lauder, 3 Rus. 343, and the cases cited.

The court below construed the will correctly, and so plain and palpable is the interpretation to be put upon it, that in the face of the decision of the inferior court and with the knowledge that the case almost entirely turned upon that point, the appellants have carefully abstained in their brief from making even an allusion to it. We could with safety to the appellees rest the case here; but as the appellants have labored the other questions involved, we will proceed to dispose of the other positions we have assumed, in which the merits of the case are fully stated.

Second.  We contend that, even without the sixth clause of the will, had it been entirely silent as to the person by whom the debts should be paid, and the fund out of which payment should be made, the devisee for life of the entire real and personal estate, being the widow of the testator, had an election either to take under the will the estate there granted *with its incumbrances*, or to renounce.    And having elected to take the enjoyment of the real and personal estate for life, she took it as it was chargeable with the debts of the testator.   By the Revised Code, 42, debts are a charge upon real and personal estate, the latter however is first subject.   Before the devisee for life was entitled to the continued possession and enjoyment of the estate under the will, the debts must be paid.   Such is the peremptory mandate of the law.   She was not bound to take under the will, Rev. Code, 64.   She could have taken her dower, and left the rest of the estate to pay the debts.   She elects to take the enjoyment of the property—to do so she must discharge the debts.   This becomes a condition precedent to her accepting the devise.   She takes possession of the whole estate with that incumbrance, and pays it off.   With what

propriety then can it be said, that the remaindermen, who had no control over her election and none over the management of the estate, shall be compelled to discharge the debts of the testator, which she herself by her own voluntary act freely elected to pay? The distinction between a devise for life under our statute *to the widow*, and a grant at common law of an estate for life, will be at once seen.' In the latter case, the estate for life is absolutely limited; the remaindermen can in no contingency be any thing but remaindermen, and to free the estate from incumbrance is equally for their benefit. In the other case, the choice is with the widow to make them remainder men or not; if she renounces, their portions are reduced to instant possession, upon the payment of the debts. If she accepts, she has the possession and enjoyment of the whole estate, and they have but the remote and gloomy prospect of remaindermen. The testator would, in the language of appellants, be "cursing" those in remainder with a seeming "blessing." They are ousted out of all hopes of possessing the estate during the life of the devisee, and in the mean time after she has, out of the assets and profits of the estate, freed it from debt, they have to come forward and pay her a bonus of twenty thousand dollars, as claimed by the moderate attorney in the inferior court, or forty thousand dollars as, rising in the demand with the dignity of the court, is now required here, for having elected to keep them for her lifetime out of a valuable estate.

The third point assumed by appellees is, that the cotton crops, &c. on hand at testator's death, admitting appellees' indebtedness, was properly assets in the executrix's hands for the payment of the debts. This the appellants' petition below admits; this the report of the commissioner admits; with this amount appellants have actually themselves credited their own account. Surely it is out of place in this court, in the face of these admissions, to set up the demand here. But there is not even a color of justice in it. On the contrary, the use by the appellants of that crop then made by the testator at the time of his death, shows that the executrix's construction of the will, when she elected to take under it, (before either avarice or ill advice induced a different course,) to have been the same with that we now contend for. What right had she to use that crop, except under the power given her in the

will, to pay the debts out of the first funds she could appropriate for that purpose? It was a portion of the personal estate of the deceased. She had but a life estate in it. She would, (if she is not so at all events,) be accountable for it to the remaindermen but for the charge to pay the debts as soon as possible. It was as much the property of testator as his negroes. It paid his debts. The appellees do not complain of its disposition at this time, but they do express their astonishment at appellants, in the face of their own admissions and of justice, making that demand upon them here.

The fourth position of appellees, that if there *is* an indebtedness by the appellees, the personal estate of testator must first be sold to pay it, needs but a reference to Rev. Code, 44.

The fifth position taken by the appellees, "that the account of the commissioners must be retaken with instructions from this court in relation to what items to allow as well as what respective portions the devisee for life and remaindermen must bear," it is hoped and believed this court will not be called upon to decide. Should, however, the preceding argument of the appellees be held for naught, and the court determine their liability to appellants, then we would respectfully offer the following suggestions as to the extent and nature of that liability.

It can only be for the indebtedness of the testator. The items, then, for repairs upon a house since testator's death, are erroneous. 1 Sim. & Stewart, Hibbert *v.* Cooke, the very case cited by appellants to establish a contrary doctrine. In that case the vice chancellor refused positively to make any allowance for repairs, but said "it was an expense to which a tenant for life choosing to occupy a mansion house must submit." The court below therefore erred in refusing to exclude those items. In the case of White *v.* White, 4 Ves. 24, a principle is established which exonerates the remainder from payment of the debts for lawsuits. There was in that case an express power given in the will to the lessee for life under the will to surrender the lease and take a new one for his own life and his two brothers, and to pay for such renewals 500 pounds, to be raised by mortgage. The lessee for life made one renewal which cost five hundred pounds, and afterwards another which cost more, and by virtue of the power of the will mortgaged

the estate, and the court so far from determining that "he and the remaindermen must pay their proportions of the debts charged upon the estate," expressly decide that those in remainder were not chargeable with any portion of the second five hundred pounds, the renewal having been made without their consent, but that the holder of the life estate must take upon himself the whole burthen of it, and that the only sum the remainder men, although equally interested, (as the court will perceive by an examination of the case,) must contribute towards, was the charge authorized to be made upon the estate by the will itself. Apply that principle to the lawsuits began and defended by the devisee for life, without the knowledge or assent of the appellees, continuing for a series of years, not yet terminated, involving the estate in many thousand dollars of debt, and it will be apparent at once that the appellees are not chargeable with any portion of them, and even in the construction of appellants, but a *proportionate* part of them, and yet the court below has made the whole sum paid the lawyers, clerks, and sheriffs, by appellants, to add to their own possessions and enjoyments, or to maintain those they already have, a charge to be borne alone by appellees.

*Appellees believe the law to be as quoted from Story's Eq.* 464, *in relation to the proport.on of i..cumbrances when they exist, to be borne by the tenant for life* and those in remainder. But the time the life estate has been *already* enjoyed is to enter into the computation. This does not however touch the question as to what *are incumbrances.* That repairs upon a house are not, Hilbert *v.* Cooke establishes; also Gower *v.* Eyre, 1 Coop. 156; 2 Atk. 383. That nothing but the actual indebtedness of testator are charges upon his estate is too plain for argument or authority to strengthen. But see White *v.* White, above cited; 3 Rus. 108; 4 Chad. 187; 1 V. & B. 274; 3 Ves. 546; 2 Sho. & Lef. 279.

There is another important item in the account allowed which ought not to have been. *The interest* was charged in each case, amounting to a large sum. This was not a charge upon those in remainder. "A devisee for life is bound to keep down interest." 1 Ves. 234; 3 Bro. C. C. 120. And that even though the principal should be exhausted; 2 Bro. C. C. 129; 5 Ves. 99; 2 Ves. 651; Chit. Eq. Dig. 381; 1 Ves. 93; 1 Turn. & K. 174.

Peck and Wife, Appellants, *v.* Glass *et al.*

Many of the items of the account were paid by the devisee for life, after they were barred, and without ever having been allowed by the court.   The account exhibits this.   The exception was taken below and overruled.   That all such accounts were not proper charges against remaindermen it is presumed will not be controverted.   The record exhibits that the fourth objection to the auditor's account was well taken.   It was improperly referred to the commissioners, having never been passed upon by the court, whose duty it was first to examine it, and either reject or allow it; if his decision was objected to, *and only then*, the court could appoint auditors and refer it to them.   It seems to us, that if this court should decide the remaindermen to be chargeable, the account of the auditors should be re-stated, upon principles to be established by the court.

Mr. Justice DAVIS delivered the opinion of the court.

It appears by the record in this case, that one Anthony Glass died in the county of Warren, in this state, in November, 1834, having first made and published his last will and testament; by which he devised all his real and personal estate to his wife, (who afterwards intermarried with the complainant Peck) for her life, remainder to defendants.   The devise to her is in the following words: "I give and bequeath unto my dear wife Helen, all, and all manner of my property real and personal, during her natural life, and for that period to hold, possess and enjoy the same, as fully and entirely as the same can be held and enjoyed."   In a subsequent, part of the will he gives the property, after the death of his wife, to the defendants.

The sixth item of his will is as follows: "I will and devise that all my just debts shall be paid as soon as possible, out of such funds as my executrix may be able to appropriate to that purpose."

The debts with which the estate was incumbered, as is shown by the report of the executrix to the probate court of Warren county, were about the sum of forty thousand dollars.   It is true that a considerable portion of that indebtedness was produced by defending the estate against unjust claims with which it was sought to be incumbered; and which if not resisted must have visited the estate with insolvency and ruin.   Mrs. Helen Peck

occupied the relation of tenant for life, and executrix to the estate. As executrix she was bound to defend it against unjust claims; and as tenant for life, from a due regard to her own interest and the interest of the remaindermen, she was no less bound.

The debts outstanding, at the death of Anthony Glass, were legal incumbrances, which the estate itself was liable to discharge, and the whole estate might have been at once sold, to pay the debts, which were charges against it, at least so much as would have been necessary for that purpose.

This duty was imposed upon Mrs. Helen Glass, both as executrix and as tenant for life. It is shown by the record, that she performed this duty, as also the manner of her performing it.

At the death of Anthony Glass there was a growing crop, which was afterwards sold for about the sum of eighteen thousand dollars; and which was as much a portion of the legal assets of the estate, as the land and negroes. This sum was applied as far as it would go, to the payment of the debts; and was an appropriation of the assets of the estate to that extent.

It is however contended, that it was the intention of the testator, that no portion of the assets should be applied to the extinguishment of the incumbrances; but that the incumbrances were to have been paid off, by the tenant for life, out of the rents and profits of the estate. If that position be true, then the eighteen thousand dollars, being assets, were improperly applied, and is a charge against the tenants for life to that extent, and although this is the natural inference to be drawn from the proposition assumed, yet it has not been seriously contended for, by counsel in the argument submitted. The truth is, the intention of the testator could have been nothing more than the law made it, and that is, that the assets of the estate should pay the debts, and the rents and profits should go to the tenants for life absolutely.

It then being conceded, that the estate was chargeable with the debts outstanding against it, what was the duty of the tenant for life? It assuredly was, to sell so much of the property, at the earliest period, as was necessary to discharge the debts and keep down the interest.

Suppose she had done so, would it not have injured the remainderman in proportion to his interest in the estate, to the same

extent that it would have injured the interest of the tenant for life? Most assuredly it would. The law however gave the tenant for life, the power to extinguish the debts out of her individual means, and she of course upon doing so would become a creditor to the estate, for the amount paid; compelling her at the same time, to keep down the interest of the debts. This she seems to have done, for the residue of the debts left unpaid, after exhausting the eighteen thousand dollars of assets. Could the remainderman complain of this? What injustice was done him by the tenant for life advancing the means necessary to extinguish the incumbrances? We think none. The tenant for life, and the remainderman might certainly have united in taking up the liabilities outstanding, in proportion to their relative interests, and have freed the estate from incumbrances; or the remainderman might have extinguished the debts, and have called upon the tenant for life to refund a proportion equal to the value of her interest in the estate, or required so much of the estate to be sold as would have satisfied such proportion.

Upon this principle, the tenant for life has equal right to demand of the remainderman the payment of his proportion, or have so much of the property sold as would be sufficient to discharge the proportion of the remainderman. Suppose the property of the estate had been sold, the interest of the tenant for life alone would not have been affected, but also that of the remainderman. The charge upon each interest would have been in their proper relative proportions, and so must be their respective contributions.

We are of opinion that no inquiry, in relation to the value of the rents and profits is necessary to be gone into, in this case. They belong absolutely to the tenant for life. It is immaterial, from what source the money was drawn, with which the tenant for life paid the debts; the inquiry is only as to the amount actually paid by tenant for life, out of her individual means, for keeping down the interest upon the incumbrances. In ascertaining the amount paid by the tenant for life, necessary expenses, in protecting the estate from unjust demands, such as attorneys' fees, and the like, ought to be allowed.

Upon ascertaining, then, the amount actually paid, it will be necessary to find the proper proportions to be borne by the tenant

for life, and the remainderman. This inquiry is to be governed by circumstances. We are first to look to the fact, that the tenant for life in this case, in order that the wishes of her deceased husband might be carried out, surrendered her dowry interest, necessarily large, in an estate like the present. We are again to look to the length of time, from the natural course of things, which the tenant for life may enjoy the estate. If she is very old, or of infirm health, her proportion should be less. If she is not so old or infirm, then she should be required to pay a larger proportion. In no event, in this case, should the tenant for life be required to pay more than one third of the incumbrances, but may be less.

We direct, that a commissioner be appointed to ascertain the facts, and that the probate court of Warren county decree accordingly; and that so much of the property be sold as will be sufficient to pay the tenant for life the amount that she may have advanced for the interest of the remainderman, selling first the personal property, and if not sufficient, then the real estate, unless the remainderman shall pay her the amount that shall be ascertained to be due.

The judgment of the court below must be reversed, and this cause remanded with instructions to proceed according to this opinion.

Judge SHARKEY gave no opinion.